ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x
                                        :
UNITED STATES OF AMERICA                :        SEALED INDICTMENT
                                        :
        -v.-                            :        S1 22 Cr.
                                        :
OLEG VLADIMIROVICH DERIPASKA,           :
 a/k/a "Oleg Mukhamedshin,"             :
OLGA SHRIKI,                            :
NATALIA MIKHAYLOVNA BARDAKOVA,          :
 a/k/a "Natalya Mikhaylovna Bardakova," :    22 CRIM 518
and                                     :
EKATERINA OLEGOVNA VORONINA,            :
 a/k/a "Ekaterina Lobanova,"            :
                                        :
             Defendants.                :
                                        :
- - - - - - - - - - - - - - - - - - - - x

                The Grand Jury charges:

                           **Overview**

        1. On or about April 6, 2018, the United States
government imposed sanctions on Russian citizen OLEG VLADIMIROVICH
DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, and a company
he controlled called "Basic Element." Among other things, those
sanctions prohibited making any contribution or provision of
funds, goods, or services by, to, or for the benefit of any person
whose property and interests in property are blocked, and receiving
any contribution or provision of funds, goods, or services from
any such person. Yet for over four years afterwards, and in
violation of those sanctions, DERIPASKA continued to retain OLGA
SHRIKI and NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya

Mikhaylovna Bardakova," the defendants, to provide hundreds of thousands of dollars worth of services for his benefit in the United States. For example, in or about 2019, SHRIKI facilitated for DERIPASKA's benefit the sale of a music studio in California for approximately $3,078,787. Then, in or about 2020, SHRIKI and BARDAKOVA helped EKATERINA OLEGOVNA VORONINA, a/k/a "Ekaterina Lobanova," the defendant, travel from Russia to the United States, so she could give birth to DERIPASKA's and VORONINA's child in the United States. SHRIKI orchestrated hundreds of thousands of dollars worth of U.S. medical care, housing, childcare, and other logistics to aid DERIPASKA's and VORONINA's efforts to have VORONINA give birth in the United States, which resulted in the child receiving U.S. citizenship. Later, in or about 2022, at DERIPASKA's further behest and for his further benefit, SHRIKI and BARDAKOVA attempted to facilitate VORONINA's return to the United States to give birth to DERIPASKA's and VORONINA's second child. Additionally, between in or about 2018 and in or about 2020, DERIPASKA routinely had SHRIKI and BARDAKOVA purchase various products in the United States for DERIPASKA's personal use and as gifts for others on his behalf. During the course of law enforcement efforts to investigate the scheme, SHRIKI destroyed evidence, while BARDAKOVA and VORONINA made false statements to U.S. government officers.

## The Defendants and Relevant Entities

2.   OLEG   VLADIMIROVICH   DERIPASKA,   a/k/a   "Oleg
Mukhamedshin," the defendant, is a Russian national.  At all times
relevant   to   this   Indictment,   DERIPASKA   was   the   owner   and
controller,   directly   or   indirectly,   of   Basic   Element   Limited
("Basic Element"), a private investment and management company for
DERIPASKA's various business interests.  As set forth in greater
detail below, on or about April 6, 2018, the United States
Department of the Treasury's Office of Foreign Assets Control
("OFAC") designated DERIPASKA as a Specially Designated National
("SDN"), in connection with its finding that the actions of the
Government of the Russian Federation with respect to Ukraine
constitute an unusual and extraordinary threat to the national
security and foreign policy of the United States (the "OFAC
Sanctions").   In so designating DERIPASKA, OFAC explained that
DERIPASKA was sanctioned for having acted or purported to act for
or on behalf of, directly or indirectly, a senior official of the
Government of the Russian Federation, as well as for operating in
the energy sector of the Russian Federation economy.  On or about
the same date, OFAC also designated Basic Element.  At all times
relevant   to   this   Indictment,   several   properties   originally
purchased by DERIPASKA in the United States, including properties
located at 2501 30th Street NW, Washington D.C.; 12 Gay Street,
New York, New York; and 11 East 64th Street, New York, New York

(collectively, the "U.S. Properties"), were maintained on his behalf.

3.    OLGA SHRIKI, the defendant, is a naturalized United States citizen living in the United States.  At all times relevant to this Indictment, SHRIKI provided services to, and for the benefit of, OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, including, for a period of time, as an employee of DERIPASKA, or entities controlled by DERIPASKA. Between in or about April 2018 and in or about 2021, despite knowledge of the OFAC Sanctions imposed on DERIPASKA, SHRIKI continued to provide services to, and for the benefit of, DERIPASKA and received funds from entities controlled by DERIPASKA, including in connection with facilitating the sale of one of DERIPASKA's holdings in the United States, gift deliveries on behalf of DERIPASKA in the United States, and the birth of DERIPASKA's first child in the United States.

4.    NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendant, is a Russian national.  At all times relevant to this Indictment, BARDAKOVA worked for OLEG VLADMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, or entities controlled by DERIPASKA, and otherwise provided services to, and for the benefit of, DERIPASKA.  Between in or about April 2018 and in or about 2022, despite knowledge of the OFAC Sanctions imposed on DERIPASKA, BARDAKOVA continued to

4

provide services to and for the benefit of DERIPASKA, including in
connection with gift deliveries on behalf of DERIPASKA in the
United States, the birth of DERIPASKA's first child in the United
States, and the planned birth of DERIPASKA's second child in the
United States.

5.   EKATERINA OLEGOVNA VORONINA, a/k/a "Ekaterina
Lobanova," the defendant, is a Russian national.  Since in or about
2015, VORONINA has been in an intimate relationship with OLEG
VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant.
Between in or about July 2020 and in or about December 2020,
VORONINA flew on a private jet funded by DERIPASKA to the United
States so that she could give birth in the United States to
DERIPASKA's child, who thereby became a U.S. citizen.  In doing
so, VORONINA and DERIPASKA engaged OLGA SHRIKI and NATALIA
MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the
defendants, to undertake hundreds of thousands of dollars in
transactions in furtherance of the scheme and in violation of U.S.
sanctions.  Later, in or about 2022, VORONINA and DERIPASKA agreed
to and did attempt to re-engage SHRIKI in connection with the
planned U.S. birth of their second child, but ultimately engaged
BARDAKOVA instead.  In or about June 2022, VORONINA flew to the
United States on another private jet funded by DERIPASKA.  Upon
arrival, VORONINA made multiple false statements to, and tried to
mislead, officers of the Department of Homeland Security, in an

attempt to prevent the officers from learning DERIPASKA's name and to conceal the roles of DERIPASKA, SHRIKI, and BARDAKOVA in hundreds of thousands of dollars of illegal transactions in violation of U.S. sanctions. VORONINA was refused entry to the United States.

6.    The U.S. Properties were purchased by OLEG VLADMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, between in or about 2005 and in or about 2008. Collectively worth tens of millions of dollars, the U.S. properties were at all relevant times managed by a company named Gracetown, Inc. Since OFAC imposed sanctions on DERIPASKA on or about April 6, 2018, individuals and/or entities controlled by DERIPASKA transmitted millions of dollars to bank accounts held by Gracetown Inc. in Manhattan for the upkeep of the U.S. Properties and for the benefit of DERIPASKA. Gracetown Inc. used the funds to pay for various expenses associated with the U.S. Properties, including staff salaries, property taxes, and other services, and to maintain the U.S. Properties.

## The International Emergency Economic Powers Act and the Relevant Sanctions Orders and Regulations

7.    The International Emergency Economic Powers Act ("IEEPA"), codified at Title 50, United States Code, Sections 1701-1708, confers upon the President authority to deal with unusual and extraordinary threats to the national security and foreign

policy of the United States.  Section 1705 provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." 50 U.S.C. § 1705(a).

8.   In 2014, pursuant to his authorities under the IEEPA, the President issued Executive Order 13660, which declared a national emergency with respect to the situation in Ukraine.  To address this national emergency, the President blocked all property and interest in property that were then or thereafter came within the United States or that were then or thereafter came within the possession or control of any United States person, of individuals determined by the Secretary of the Treasury to meet one or more enumerated criteria.  These criteria include, but are not limited to, individuals determined to be responsible for or complicit in, or who engage in, actions or policies that threaten the peace, security, stability, sovereignty, or territorial integrity of Ukraine; or who materially assist, sponsor, or provide financial, material, or technological support for, or goods or services to, individuals or entities engaging in such activities. Executive Order 13660 prohibits, among other things, the making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked, and the receipt of any contribution or

provision of funds, goods, or services from any such person.

9.    The national emergency declared in Executive Order 13660 with respect to the situation in Ukraine has remained in continuous effect since 2014, and was most recently continued on March 2, 2021.

10.    The President on multiple occasions expanded the scope of the national emergency declared in Executive Order 13660, including through: (1) Executive Order 13661, issued on March 16, 2014, which addresses the actions and policies of the Russian Federation with respect to Ukraine, including the deployment of Russian Federation military forces in the Crimea region of Ukraine; and (2) Executive Order 13662, issued on March 20, 2014, which addresses the actions and policies of the Government of the Russian Federation, including its purported annexation of Crimea and its use of force in Ukraine.  Executive Orders 13660, 13661, and 13662 are collectively referred to as the "Ukraine-Related Executive Orders."  Additionally, Executive Order 14065, issued on February 21, 2022, expanded the scope of the national emergency, finding that the Russian Federation's purported recognition of the so-called Donetsk People's Republic or Luhansk People's Republic regions of Ukraine contradicts Russia's commitments under the Minsk Agreements and further threatens the peace, stability, sovereignty, and territorial integrity of Ukraine.

11.    The Ukraine-Related Executive Orders authorized the

8

Secretary of the Treasury to take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President under the IEEPA, as may be necessary to carry out the purposes of those orders.  The Ukraine-Related Executive Orders further authorized the Secretary of the Treasury to redelegate any of these functions to other offices and agencies of the United States Government.

12.   To implement the Ukraine-Related Executive Orders, OFAC issued certain Ukraine-Related Sanctions Regulations.  These regulations incorporate by reference the definition of prohibited transactions set forth in the Ukraine-Related Executive Orders. *See* 31 C.F.R. § 589.201. The regulations also provide that the names of persons designated directly by the Ukraine-Related Executive Orders, or by OFAC pursuant to the Ukraine-Related Executive Orders, whose property and interests are therefore blocked, are published in the Federal Register and incorporated into the SDN and Blocked Persons List (the "SDN List"), which is published on OFAC's public website. *See* 31 C.F.R. § 589.201 n.1.

13. According to the Ukraine-Related Sanctions Regulations, a person whose property and interest in property is blocked pursuant to the Ukraine-Related Executive Orders is treated as having an interest in all property and interests in property of any entity in which the person owns, directly or indirectly, a 50 percent or greater interest. *See* 31 C.F.R.

§ 589.406. Accordingly, such an entity is deemed a person whose property and interests in property are blocked, regardless of whether the name of the entity is incorporated into OFAC's SDN List. *See* 31 C.F.R. § 589.406.

14. On or about April 6, 2018, OFAC designated OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, as an SDN pursuant to the Ukraine-Related Executive Orders. In particular, OFAC designated DERIPASKA pursuant to Executive Order 13661 for having acted or purported to act for or on behalf of, directly or indirectly, a senior official of the Government of the Russian Federation, as well as pursuant Executive Order 13662 for operating in the energy sector of the Russian Federation economy. On or about the same date, OFAC also designated Basic Element for being owned or controlled by, directly or indirectly, DERIPASKA. As OFAC explained, Basic Element is a private investment and management company for DERIPASKA's various business interests.

### SHRIKI and BARDAKOVA's Work for DERIPASKA Post-Sanctions

15. Between in or about 2013 and in or about 2018, OLGA SHRIKI, the defendant, lived in the United States and worked for Basic Element in its Manhattan office. Following OFAC's designation of OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, and Basic Element on or about April 6, 2018, SHRIKI helped to wind down the Manhattan office of Basic Element, and continued to work for the benefit of DERIPASKA. On

or about July 13, 2018, SHRIKI emailed herself a document entitled "Olga Shriki Functional Responsibilities May 2018.docx," which listed SHRIKI as a "Trusted contact for any assignments by OVD". "OVD" are DERIPASKA's initials.  The document also states that SHRIKI's job responsibilities included "[s]earching for and locating necessary items as requested by OVD or his team members".

16.  In or about July 2018, after OFAC designated OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, as an SDN, OLGA SHRIKI, the defendant, created a consulting business named Global Consulting Services LLC ("Global Consulting").  Through Global Consulting, SHRIKI coordinated with NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendant, to continue providing services to and for the benefit of DERIPASKA and to continue receiving funds from DERIPASKA or entities controlled by DERIPASKA.

17.  During the relevant period, OLGA SHRIKI, the defendant, had knowledge of the OFAC sanctions imposed on OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant. For example:

a.  On or about April 6, 2018, SHRIKI received a text message with a link to the U.S. Treasury Department's announcement of the imposition of sanctions on DERIPASKA.  SHRIKI replied, in part and substance, that the sanctions were likely to impact her work.

b.      On or about January 18, 2020, SHRIKI had a conversation with an individual. SHRIKI made an audio recording of the conversation, during which she explained to the individual, in part, that, "My clients are from [Moscow] but right now, because of the sanctions I can't work with some of them.  And that was a very influential relationship . . . So as a United States citizen I can't work with somebody, it's against the law. . . . It's United States law.  You can't work for people who are under United States sanctions.  So I don't. . . . . So if someone's on the blocked list, you can't."  Despite this knowledge, and subsequent to this conversation, SHRIKI received over a hundred thousand dollars to provide services to and for the benefit of DERIPASKA.

18.   During the relevant period, NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendant, had knowledge of the sanctions imposed on DERIPASKA.  For example:

a.   On or about December 10, 2018, BARDAKOVA accessed a news article discussing efforts to "save Russian oligarch Oleg Deripaska's empire from the clutches of the US Office of Foreign Assets Control."

b.   On or about September 1, 2020, BARDAKOVA accessed a document called "List of Sanctioned Companies"[1] that included "EN+", with the notation "Linked to Deripaska, Oleg

---

[1] Documents and communications in Russian cited in this Indictment have been translated into English as draft translations.

Vladimirovich", and "Agroholding Kuban", with the notation "part of group 'Basic Element' of O. Deripaska."

### The Sanctions Violations

19.   From at least in or about 2019 through in or about 2022, OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, employed OLGA SHRIKI and NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendants, to provide funds, goods, and services to and for the benefit of DERIPASKA and companies owned and controlled by DERIPASKA, and to receive funds, goods, and services from DERIPASKA.  DERIPASKA continued to receive funds, goods, and services from SHRIKI, assisted by BARDAKOVA, and to provide funds, goods, and services to SHRIKI and other United States persons by and through BARDAKOVA, after being designated as an SDN in or about April 2018 and in violation of the Ukraine-Related Executive Orders and Ukraine-Related Sanctions Regulations, until at least June 2022.  In particular, DERIPASKA, the defendant, used SHRIKI's and BARDAKOVA's assistance to engage in several endeavors in the United States in violation of the Ukraine-Related Executive Orders and Ukraine-Related Sanctions Regulations, including:

a.      In or about December 2019, SHRIKI facilitated the sale of a music studio in Burbank, California (the "Music Studio") for the benefit of DERIPASKA, who owned and controlled the Music Studio through a series of corporate entities.

SHRIKI then attempted to expatriate the proceeds of the sale, approximately $3,078,787, from an account at Wells Fargo Bank, held in the name of Ocean Studios LLC, to a bank account in Russia belonging to a DERIPASKA-controlled entity.

b.      Between in or about May 2018 and in or about 2020, BARDAKOVA instructed SHRIKI to purchase and send flower and gift deliveries on behalf of DERIPASKA to DERIPASKA's social contacts in the United States and Canada. The deliveries included, among others, two Easter gift deliveries to a U.S. television host, two flower deliveries to a then-former Canadian Parliament member, and two flower deliveries in 2020 to EKATERINA OLEGOVNA VORONINA, a/k/a "Ekaterina Lobanova," the defendant, while she was in the United States to give birth to DERIPASKA's child. The flower and gift deliveries were often accompanied by notes that identified DERIPASKA as the gifter, such as "Wishing you and your family a beautiful Easter Holiday. Oleg D." or "Best Wishes On Your Birthday. Oleg D."

c.      In or about 2020, BARDAKOVA instructed SHRIKI to purchase items in the United States for DERIPASKA's personal use, such as iPhones and clothing. In or about December 2020, after VORONINA transported the purchased items back to Russia, BARDAKOVA wrote to SHRIKI inquiring about the iPhones SHRIKI had purchased for DERIPASKA, "I couldn't find the boss's phones. Does [VORONINA] have them?" SHRIKI confirmed that

14

VORONINA had packed them with her personal belongings. Additionally, on or about December 9, 2020, DERIPASKA and BARDAKOVA transmitted between themselves an image of a man photographing himself below the neck in a blue long-sleeved shirt. Approximately 24 minutes later, BARDAKOVA sent the same image to SHRIKI with the message, "Olga, American Eagle wants a lot of units." In a separate message on another occasion, BARDAKOVA sent SHRIKI, who was then living in the United States, an image of an American Eagle branded t-shirt, writing "OV wants these t-shirts, 10 counts, size XL. Could you find them and urgently send them?"

        d.        In or about 2020, as the pandemic began and people were worried about the state of hospital care in some areas, DERIPASKA and VORONINA agreed that their child should be born in the United States. DERIPASKA, by and through BARDAKOVA, SHRIKI, and other associates, organized and funded this endeavor, which entailed over $300,000 in transactions in the United States. In or about March 2020, DERIPASKA counseled VORONINA on obtaining a U.S. visa, including by telling her to be "careful" ahead of an interview by U.S. immigration authorities. VORONINA thereafter applied for and obtained a U.S. visa for a purported ten-day tourism visit without disclosing her intent to travel and stay in the United States for approximately six months to give birth to DERIPASKA's child.

        e.        Between in or about July 2020 and

December 2020, SHRIKI and BARDAKOVA, working at the direction and for the benefit of DERIPASKA and VORONINA, facilitated arrangements for VORONINA to give birth to DERIPASKA's child in the United States. SHRIKI and BARDAKOVA coordinated with various companies and individuals to provide, among other arrangements, (1) registration at the hospital where VORONINA gave birth, (2) obstetrical care while VORONINA was in Los Angeles, California, (3) rental of a two-story penthouse apartment in Beverly Hills, California, where VORONINA stayed for approximately six months (the "Beverly Hills Penthouse"), (4) childcare in the form of at least five nannies and a housekeeper, (5) cord blood and placenta preservation, and (6) VORONINA's arrival and departure from the United States on a private jet.

f.        DERIPASKA approved and provided funding for these arrangements related to the birth in 2020 of his child in the United States. As coordinated by BARDAKOVA on behalf of DERIPASKA, SHRIKI received over $170,000 in payments to her Global Consulting bank account at a U.S. financial institution. SHRIKI used some of these funds to pay for, or reimburse herself for the payment of, rent for the Beverly Hills Penthouse, medical providers, nannies, transportation, and other expenses related to DERIPASKA's child, for the benefit of DERIPASKA and VORONINA. Using funds from her personal bank account in Russia, BARDAKOVA separately caused thousands of dollars of payments to various

service providers for the benefit of DERIPASKA and VORONINA in the United States.

g.        DERIPASKA        obtained        reports        from BARDAKOVA and VORONINA about SHRIKI's services to facilitate the birth of his child.  For example, on or about July 2, 2020, VORONINA arrived in Los Angeles on a private jet approved by DERIPASKA and sent DERIPASKA photos of the Beverly Hills Penthouse SHRIKI and BARDAKOVA had rented for her to stay while in the United States. The next day, on or about July 3, 2020, VORONINA sent DERIPASKA a message, stating, in part, "Now Olga and I are going to drive to see where the clinic is and get a local telephone."   DERIPASKA acknowledged the message.  Later, on or about the same day, SHRIKI sent an audio message to BARDAKOVA reporting on her assistance to VORONINA, including the errands VORONINA had described to DERIPASKA.  On or about July 4, 2020, BARDAKOVA replied to SHRIKI with an audio message stating, in part, "Listen, it's so cool that you sorted out just about everything with her.   That's just excellent, really wonderful, really good.   The dad is happy.   I told him that you are with her, that everything is wonderful, great, that you guys will have an appointment with a doctor there, and he goes, 'Well, good, good.  Yes.  Keep me informed.'"  SHRIKI replied to BARDAKOVA's message, in part, "Go ahead and praise me there."

h.        DERIPASKA's  child  was  born  in  August

17

2020, in Los Angeles, California, obtaining U.S. citizenship by birth. DERIPASKA arranged for SHRIKI, BARDAKOVA, and VORONINA to obtain a U.S. passport and U.S. birth certificate for DERIPASKA's child. On or about the date of the child's birth, SHRIKI left an audio message for BARDAKOVA, discussing that the child's last name on the birth certificate would be differentiated from the father's last name by asking whether VORONINA had been "prepared" that "the last name will be different?" SHRIKI also stated that VORONINA had already ordered some custom-made items for the baby with initials embroidered. As evidenced in SHRIKI's emails, SHRIKI had in fact purchased personalized baby clothes and a picture frame to be sent to the Beverly Hills Penthouse with inscriptions including variations of the child's initials and name. Ultimately, on the child's birth certificate, VORONINA omitted the name of the father, DERIPASKA, but spelled the child's last name using a variation of DERIPASKA's surname with a couple of the letters changed and gave the child a middle name that makes clear the father is DERIPASKA.

i.     In or about 2022, DERIPASKA and VORONINA decided to have VORONINA give birth to their second child in the United States, the result of which would be that the second child also would have United States citizenship. DERIPASKA once again and in violation of U.S. sanctions authorized transactions related to this endeavor, which included over $400,000 in expenses related to a private charter flight for VORONINA and those accompanying

18

her from Russia to the United States, a six-month pre-paid house rental in Beverly Hills, and additional pre-paid medical and other expenses.

        j.        On or about April 12, 2022, VORONINA wrote to DERIPASKA inquiring whether she could tell another DERIPASKA employee "to connect with Olga Shriki in connection with our trip?" DERIPASKA replied to VORONINA, "Of course." However, when VORONINA asked SHRIKI to organize everything as was done in connection with the birth of DERIPASKA's first child, including "doctor, clinic, apartment, everything maximally the same," SHRIKI expressed that she was busy with other full time work. Instead, SHRIKI advised BARDAKOVA on these tasks, sending BARDAKOVA the addresses of the hospital used for VORONINA's first birth, the apartment address, the name of the doctor, and advice on how to use a realtor. BARDAKOVA then travelled to the United States and coordinated the arrangements for VORONINA's planned stay, including a charter flight for VORONINA to fly into the United States, a rented house in Beverly Hills, and potential appointments with the same obstetrician, all for the benefit of DERIPASKA and VORONINA.

        k.        On or about May 13, 2022, BARDAKOVA traveled to Los Angeles to tour houses potentially to rent for VORONINA and for the benefit of DERIPASKA. On or about May 18, 2022, VORONINA forwarded DERIPASKA a message from BARDAKOVA with

a video of a potential rental. BARDAKOVA's message stated, in part, "if OV agrees, then I would vote for this house as it meets most of the requirements". VORONINA noted to DERIPASKA, "Nataliya found it, but very expensive, we will keep looking". DERIPASKA responded, "now will try to negotiate", prompting a "thank you" from VORONINA.

l.      On or about May 20, BARDAKOVA sent VORONINA a link for a house rental listing in Beverly Hills. VORONINA sent the link to DERIPASKA, stating it was a better option "but they are not moving on price and have two other families ready to rent. How does it look to you?" DERIPASKA responded, "Will inquire." BARDAKOVA then finalized the agreement for the house rental. On or about May 21, 2022, VORONINA forwarded DERIPASKA a message advising, in part, "Our application was selected and confirmed. Now deciding questions of payment". DERIPASKA responded, "Hooray". BARDAKOVA then coordinated approximately $229,000 in payments to intermediaries in Russia in order to have a U.S.-based entity fund the cost of the Beverly Hills house rental.

m.      That same month, in or about May 2020, DERIPASKA and BARDAKOVA arranged for VORONINA's travel on a private jet from Russia to Los Angeles so that she could arrive in the United States in time to give birth to DERIPASKA's and VORONINA's second child and for their benefit. On or about May 25, 2022,

BARDAKOVA sent a message to VORONINA, stating, in part, "The Chief confirmed boarding for June 1.  Let's decide on the outgoing flight from Moscow.  From Sheremetyevo (so as not to go far) at 10, 11, 12?"  VORONINA selected the noon flight time and then asked, "Is the 1st necessary?  And what's the plan for the flight times and connections".  BARDAKOVA replied, in part, "Oleg Vladimirovich so instructed.  Insisting on flight out.  Planes very hard to confirm now."  VORONINA forwarded BARDAKOVA's message to DERIPASKA and added, "We will fly when you tell us to".  DERIPASKA replied, "Looks like flight on the 1st will happen."  On June 1, 2022, a Cyprus aviation charter service paid a Swiss charter company approximately 160,000 Euros for a private jet to ferry VORONINA, DERIPASKA's and VORONINA's first child, and a nanny from Istanbul to Los Angeles.  On or about June 1, 2022, VORONINA in fact traveled to Los Angeles on the private jet.

### SHRIKI's Deletion of Records and Obstruction of Justice

20.  On or about September 23, 2020, a federal grand jury sitting in the Southern District of New York issued a subpoena to OLGA SHRIKI, the defendant, seeking records pertaining to the grand jury's investigation into OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant, and his real estate holdings in the United States (the "Grand Jury Subpoena").  SHRIKI failed to produce and deleted several categories of records responsive to the Grand Jury Subpoena.  For example, SHRIKI failed

to produce certain communications regarding facilitating the sale of the Music Studio and making purchases for DERIPASKA. SHRIKI also deleted records responsive to the Grand Jury Subpoena, including text messages between SHRIKI and NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendant, coordinating the delivery of the Easter flowers and gifts to the U.S. television host, voice messages between SHRIKI and BARDAKOVA discussing SHRIKI's assistance to EKATERINA OLEGOVNA VORONINA, a/k/a "Ekaterina Lobanova," the defendant, and screenshots of bank transfers shared between SHRIKI and BARDAKOVA pertaining to funding for Global Consulting to pay for VORONINA's expenses while in the United States. On or about June 15, 2021, after an Assistant United States Attorney notified SHRIKI's attorney that SHRIKI had not produced all records required by the Grand Jury Subpoena, SHRIKI conducted web searches on her phone for "if the client withholds information about sanctions list."

### VORONINA's and BARDAKOVA's False Statements

21. On or about June 2, 2022, EKATERINA OLEGOVNA VORONINA, a/k/a "Ekaterina Lobanova," the defendant, arrived in Los Angeles on a private jet with the first child she had with OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," the defendant. Upon arrival, officers from the U.S. Department of Homeland Security interviewed VORONINA. During those interviews, VORONINA falsely stated that the name of the father of her child

22

and her then-unborn child was "Alec Deribasko." When subsequently asked whether she knew "Oleg Deripaska," VORONINA stated that she did know him and that he was a friend. Later, when shown a photo of DERIPASKA, VORONINA stated that the individual depicted in the photo looked like the father of her child. VORONINA also stated, in substance and in part, that she did not know where her child's father lived or his occupation. In addition, VORONINA stated, in substance and in part, that her parents had paid for her private jet to arrive in the United States and that her parents had rented her a house in Beverly Hills for her to stay while in the United States.

        22. On or about June 3, 2022, Special Agents from the Federal Bureau of Investigation met NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendant, at the Los Angeles airport where she was waiting to pick up EKATERINA OLEGOVNA VORONINA, a/k/a "Ekaterina Lobanova," the defendant, after VORONINA's arrival on the private jet BARDAKOVA had helped arrange. The agents accompanied BARDAKOVA back to her hotel where they interviewed her in the lobby. During the interview, BARDAKOVA acknowledged, in substance and in part, that she had traveled to the United States to facilitate arrangements for VORONINA to give birth in the United States. But BARDAKOVA also made several materially false statements. For example, BARDAKOVA falsely stated, in substance and in part, that she had never communicated

with DERIPASKA directly.   BARDAKOVA also falsely stated, in substance and in part, that she did not assist VORONINA with VORONINA's trip in 2020 to give birth to her first child with DERIPASKA and, specifically, did not send any money from BARDAKOVA's accounts for expenses associated with that trip. BARDAKOVA also falsely stated, in substance and in part, that she had never visited DERIPASKA's property located at 12 Gay Street, New York, New York.

### COUNT ONE
**(Conspiracy to Violate the International Emergency Economic Powers Act)**

The Grand Jury further charges:

23.   The allegations set forth above in Paragraphs 1 through 22 are realleged and incorporated by reference as if set fully forth herein.

24.   From at least in or about April 2018 through in or about the present, in the Southern District of New York and elsewhere, OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," OLGA SHRIKI, and NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendants, and others known and unknown, did combine, conspire, confederate, and agree together and with each other to violate the IEEPA, in violation of 50 U.S.C. § 1705, Executive Orders 13660, 13661, and 13662, and 31 C.F.R. § 589.201.

25.   It was a part and an object of the conspiracy that

OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," OLGA SHRIKI, and NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendants, and others known and unknown, would and did violate, attempt to violate, and cause a violation of a license, order, regulation, and prohibition issued under the IEEPA.

> (Title 50, United States Code, Section 1705; Executive Orders 13660, 13661, and 13662; Title 31, Code of Federal Regulations § 589.201.)

### COUNT TWO
**(Destruction of Records)**

The Grand Jury further charges:

26. The allegations set forth above in Paragraphs 1 through 22 are realleged and incorporated by reference as if set fully forth herein.

27. From at least in or about 2020 through at least in or about the present, in the Southern District of New York and elsewhere, OLGA SHRIKI, the defendant, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, to wit, SHRIKI deleted portions of conversations and images related to her work for OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," after

being served with a Grand Jury Subpoena requiring the production of such records.

(Title 18, United States Code, Sections 1519 and 2.)

### COUNT THREE
### (False Statements)

The Grand Jury further charges:

28. The allegations set forth above in Paragraphs 1 through 22 are realleged and incorporated by reference as if set fully forth herein.

29. On or about June 2, 2022, in the Southern District of New York and elsewhere, NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations, to wit, when interviewed by Special Agents from the Federal Bureau of Investigation, BARDAKOVA falsely stated that (1) she never communicated with OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," directly, (2) she had not assisted EKATERINA OLEGOVNA VORONINA, a/k/a "Ekaterina Lobanova," with VORONINA's trip in 2020 to give birth to her first child with DERIPASKA and, specifically, did not send any money from BARDAKOVA's accounts for expenses associated with that trip, and (3) she had never visited any of DERIPASKA's properties in the United States, when in truth

and in fact, and as BARDAKOVA knew (1) BARDAKOVA regularly communicated directly with DERIPASKA, (2) BARDAKOVA assisted VORONINA with arrangements for VORONINA's 2020 trip to the United States to give birth to DERIPASKA's child and paid for some of VORONINA's expenses related to that trip from BARDAKOVA's bank account, and (3) BARDAKOVA had visited DERIPASKA's property located at 12 Gay Street, New York, New York.

(Title 18, United States Code, Section 1001.)

### COUNT FOUR
### (False Statements)

The Grand Jury further charges:

30. The allegations set forth above in Paragraphs 1 through 22 are realleged and incorporated by reference as if set fully forth herein.

31. On or about June 2, 2022, in the Southern District of New York and elsewhere, EKATERINA OLEGOVNA VORONINA, a/k/a "Ekaterina Lobanova," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations, to wit, when interviewed by officers from the U.S. Department of Homeland Security, VORONINA falsely stated that her parents had rented her housing accommodations during her intended stay in Los Angeles, California, when in truth and in fact, and as VORONINA knew, OLEG

VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," and NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova, the defendants, had rented, approved, and funded her housing.

(Title 18, United States Code, Section 1001.)

### FORFEITURE ALLEGATION

32. As a result of committing the offense alleged in Count One of this Indictment, OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," OLGA SHRIKI, and NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offense alleged in Count One, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense and the following specific property:

a.     Any and all monies and funds previously on deposit at Wells Fargo Bank in account no. 2502560838, held in the name of Ocean Studios LLC, and any and all funds traceable thereto, including accrued interest;

b.     The real property located at 2501 30th Street NW, Washington, D.C.;

c.     The real property located at 12 Gay

Street, New York, New York; and

        d.      The real property located at 11 East 64th Street, New York, New York.

### Substitute Asset Provision

33. If any of the property described above as being subject to forfeiture, as a result of any act or omission of OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," OLGA SHRIKI, and NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya Mikhaylovna Bardakova," the defendants,

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461 to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

                    (Title 18, United States Code, Sections 981;
                     Title 21, United States Code, Section 853;
                     Title 28, United States Code, Section 2461.)


FOREPERSON  9/28/22


DAMIAN WILLIAMS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

OLEG VLADIMIROVICH DERIPASKA, a/k/a "Oleg Mukhamedshin," OLGA
SHRIKI, NATALIA MIKHAYLOVNA BARDAKOVA, a/k/a "Natalya
Mikhaylovna Bardakova," and EKATERINA OLEGOVNA VORONINA, a/k/a
"Ekaterina Lobanova,"

Defendants.

## SEALED INDICTMENT

S1 22 Cr. ____

(50 U.S.C. § 1705; Executive Orders 13660, 13661, and 13662; 31
C.F.R. § 589.201; 18 U.S.C. §§ 1001, 1519, & 2.)

DAMIAN WILLIAMS
United States Attorney.

_Foreperson._

9/28/22

9/28/22  Filed indictment

Warrant issued

Copy USAO